**No. 25-60232**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

---

**KAREN HUGHEY, EXECUTRIX OF THE ESTATE OF
JAMES ALLEN HUGHEY,**

*Plaintiff - Appellant*

**V.**

**TIPPAH COUNTY, MISSISSIPPI; TOMMY MASON,
IN HIS INDIVIDUAL CAPACITY**

*Defendants - Appellees*

---

**BRIEF OF APPELLANT**

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

Honorable Judge Glen H. Davidson, Senior United States District Judge

JIM WAIDE, MS Bar No. 6857
waide@waidelaw.com
RACHEL PIERCE WAIDE, MS Bar No. 100420
rpierce@waidelaw.com
YANCE FALKNER, MS Bar No. 106107
yfalkner@waidelaw.com
WAIDE & ASSOCIATES, P.A.
Post Office Box 1357
Tupelo, MS 38802-1357
(662) 842-7324 / Telephone
(662) 842-8056 / Facsimile

ATTORNEYS FOR PLAINTIFF-APPELLANT

No. 25-60232
_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT
_____

KAREN HUGHEY, EXECUTRIX OF THE ESTATE OF
JAMES ALLEN HUGHEY,

*Plaintiff - Appellant*

V.

TIPPAH COUNTY, MISSISSIPPI; TOMMY MASON,
IN HIS INDIVIDUAL CAPACITY

*Defendants - Appellees*
_____

CERTIFICATE OF INTERESTED PARTIES
_____

The undersigned counsel of record certifies that the following listed persons

and entities as described in the fourth sentence of FIFTH CIRCUIT RULE 28.2.1 have

an interest in the outcome of this case.  These representations are made in order that

the Judges of this Court may evaluate possible disqualification or recusal.

1.   Karen Hughey, Executrix of the Estate of James Allen Hughey,
     Plaintiff-Appellant;

2.   Jim Waide, counsel for Plaintiff-Appellant;

3.   Rachel Pierce Waide, counsel for Plaintiff-Appellant;

4.   Yance Falkner, counsel for Plaintiff-Appellant;

5.   Waide & Associates, P.A., counsel for Plaintiff-Appellant;

6.      Richard Shane McLaughlin, counsel for Plaintiff-Appellant;

7.      McLaughlin Law Firm, counsel for Plaintiff-Appellant;

8.      Tippah County, Mississippi, Defendant-Appellee;

9.      Daniel J. Griffith, counsel for Defendant-Appellee;

10.     Arnold U. Luciano, counsel for Defendant-Appellee;

11.     M. Mckenzie Williamson Price, counsel for Defendant-Appellee;

12.     Jacks Griffith Luciano, P.A., counsel for Defendant-Appellee;

13.     Tommy Mason, in his individual capacity, Defendant-Appellee;

14.     William Robert Allen, counsel for Defendant-Appellee;

15.     Katelyn Riley, counsel for Defendant-Appellee; and

16.     Butler Snow, L.L.P., counsel for Defendant-Appellee.

SO CERTIFIED, this 1st day of October, 2025.

*/s/Jim Waide*
Jim Waide
Counsel for Plaintiff-Appellant

iii

## **STATEMENT REGARDING ORAL ARGUMENT**

Oral argument should be granted.  This court should discuss whether qualified immunity can be granted based on James Hughey's failure to plead his own actions in an excessive force case when James Hughey was unable to recall those actions because of mental incapacity.

## <u>TABLE OF CONTENTS</u>

CERTIFICATE OF INTERESTED PARTIES ................................................................. ii

STATEMENT REGARDING ORAL ARGUMENT ................................................... iv

TABLE OF AUTHORITIES ................................................................................. vi

STATEMENT OF JURISDICTION ...................................................................... viii

STATEMENT OF THE ISSUES ............................................................................ 1

STATEMENT OF THE CASE ............................................................................... 2

STANDARD OF REVIEW ................................................................................. 14

SUMMARY OF THE ARGUMENTS ..................................................................... 15

ARGUMENTS ................................................................................................ 16

CERTIFICATE OF SERVICE .............................................................................. 25

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS ........................................... 26

# **TABLE OF AUTHORITIES**

## **Federal Court Cases**

*Abraham v. Raso,* 183 F.3d 279 (3d Cir.1999)..................................................22

*Arnold v. Williams*, 979 F.3d 262 (5th Cir. 2020) ...........................................23

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).............................................15

*Brittan Commc'ns Int'l Corp. v. Sw. Bell Tel. Co.*, 313 F.3d 899
    (5th Cir. 2002).............................................................................................14

*Bush v. Strain*, 513 F.3d 492 (5th Cir. 2008)..............................................17, 18

*Floyd v. City of Kenner, La.*, 351 F. App'x 890 (5th Cir. 2009)......................20

*Graham v. Connor,* 490 U.S. 386 (1989) ......................................................... 19

*Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.,* 313 F.3d 305
    (5th Cir. 2002).............................................................................................14

*Guerra v. Castillo,* 82 F.4th 278 (5th Cir. 2023)............................................23

*Heck v. Humphrey,* 512 U.S. 477 (1994) ............................................... passim

*Hicks v. LeBlanc*, 81 F.4th 497 (5th Cir. 2023)..............................................18

*Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417 (5th Cir. 2001) ..........................14

*Hughey v. Tippah Cnty., Mississippi,* No. 3:18-CV-00004-NBB-RP,
    2018 WL 4471765 (N.D. Miss. Sept. 18, 2018).........................................5

*Hughey v. Tippah Cnty., Mississippi*, No. 3:18-CV-004-GHD-RP,
    2024 WL 3280653 (N.D. Miss. July 2, 2024) .....................................19, 20

*Hughey v. Tippah Cnty., Mississippi,* No. 3:18-CV-004-GHD-RP,
    2025 WL 1230458 (N.D. Miss. Apr. 28, 2025) ...................................16, 20

*Jackson v. City of Beaumont Police Dep't*, 958 F.2d 616 (5th Cir. 1992) .........20, 22

*Johnson v. Johnson*, 385 F.3d 503 (5th Cir. 2004)......................................................14

*Lytle v. Bexar Cnty., Tex*., 560 F.3d 404 (5th Cir. 2009) ............................... 19, 22-23

*North Carolina v. Alford*, 400 U.S. 25 (1970)..........................................................7

*Sampy v. Rabb*, 144 F.4th 796 (5th Cir. 2025) ..........................................................18

*Santander v. Salazar*, 133 F.4th 471 (5th Cir. 2025)................................... 18-19, 23

*Schultea v. Wood*, 47 F.3d 1427 (5th Cir. 1995)....................................................2, 20

*Stratta v. Roe*, 961 F.3d 340 (5th Cir. 2020) ...........................................................15

**State Court Cases**

*Parker v. State*, 962 So.2d 25 (Miss. 2007) .............................................................17

*Terry v. State,* 126 So.3d 946 (Miss. Ct. App. 2013) ................................................17

**Statutes and Rules**

28 U.S.C. § 1291 ................................................................................................. viii

28 U.S.C. § 1331 ................................................................................................. viii

42 U.S.C. § 1983 ...................................................................................8, 10, 16, 18

## <u>STATEMENT OF JURISDICTION</u>

The district court had federal question jurisdiction under 28 U.S.C. § 1331. This Court has jurisdiction over the appeal from the final judgment of the district court, pursuant to 28 U.S.C. § 1291. The district court's Final Judgment was filed on April 28, 2025. ROA. 1201. The Notice of Appeal was timely filed on April 29, 2025, ROA. 1202, and an Amended Notice of Appeal was timely filed on May 5, 2025. ROA. 1205.

## **STATEMENT OF THE ISSUES**

1.  Whether a conviction for burglary bars a Fourth Amendment claim for use of excessive force under *Heck v. Humphrey,* 512 U.S. 477 (1994)?

2.  Whether qualified immunity should be granted in a Fourth Amendment excessive force case when Plaintiff James Hughey's mental condition prevented him from remembering any details of his own actions, making him dependent upon Defendants' testimony to describe those actions?

## STATEMENT OF THE CASE

On January 4, 2018, James Allen Hughey filed his original complaint against Tippah County Deputy Sheriff Tommy Mason and Tippah County, Mississippi. ROA. 18-25.  James Hughey's complaint alleged that Defendant Mason had nearly beaten him to death in violation of the Fourth Amendment and state law.  ROA. 18-25.  James Hughey also sued Tippah County for failure to control Defendant Mason's known propensities for violence.  ROA. 18-25.

On April 18, 2018, Defendant Mason moved for judgment on the pleadings based on qualified immunity.  ROA. 70-74.  Mason also moved to stay the action pending resolution of his motion.  ROA. 84-87.  The Magistrate Judge stayed the action the day after the motion was filed.  ROA. 88.

On May 17, 2018, Plaintiff filed a response in opposition to the motion for judgment on the pleadings and a memorandum brief in support of that response. ROA. 93-95, 96-102.  Plaintiff also moved the Court to lift the stay.  ROA. 103-106.

On July 2, 2018, District Judge Neal Biggers, to whom the case was originally assigned, denied the motion for judgment on the pleadings.  However, Judge Biggers noted Plaintiff had not pled facts about his own actions and directed Plaintiff to file a "*Schultea* Reply."[1]  ROA. 120-125.

---

[1] *Schultea v. Wood*, 47 F.3d 1427, 1433-34 (5th Cir. 1995).

Plaintiff filed his *Schultea* Reply on July 10, 2018. ROA. 126-130.  This reply alleged the following facts:

**Plaintiff's *Schultea* Reply**

On or about June 7, 2017, James Hughey ("Hughey") went to the home of Denver Crumpton. Crumpton was the step-father to Hughey's ex-girlfriend. Hughey went to the home to visit Crumpton. Hughey was unarmed and posed no danger to anyone.

Hughey knocked on the door of the residence. Defendant Tommy Mason ("Mason"), a police officer acting under color of State law, answered the knock and opened the door. For no reason known to Hughey, Mason began beating Hughey savagely with his fists. Hughey did not provoke the beating. Because of Hughey's pre-existing health problems, and as a result of the trauma from the beating, Hughey has no substantive memory of the events after the beating. Hughey knows that Mason hit him multiple times with his fists. Hughey does not remember the other details of the assault as far as the means employed by Mason to inflict injury. Hughey is a diabetic and suffers from elevated ammonia levels. As a result of this, and the beating, Hughey simply remembers that he knocked on the door, that Mason answered the door, and that Mason began beating him with his fists for no reason.

Hughey's injuries from the beating are consistent with his allegations of an overwhelming use force. Hughey suffered multiple broken ribs and a splenic laceration. Hughey was hospitalized after the beating until his release several weeks later on July 15, 2017. Hughey's Discharge Summary from Regional One Health is attached hereto as Exhibit "A." The medical record reflects that Hughey suffered:

1. Grade 4 splenic laceration;
2. Left rib fractures 8, 9, and 10.
3. Right rib fractures 8 and 9.
4. L1 and L2 transverse process fractures.

(Exhibit "A"). The records reflect that "[o]n June 9, 2017, the patient was admitted to the hospital. He presented as a transfer from an outside hospital with a splenic laceration and rib fractures, status post assault."

3

(Exhibit "A" at p. 1). Hughey's factual allegations, and his medical records, show an overwhelming application of force. The force was objectively unreasonable, and constitutionally actionable, in light of Hughey's factual allegations that his pre-beating conduct was limited to knocking on a door, and that he posed no danger to Mason or anyone else.

Hughey is mindful that the Court instructed him to adequately allege facts regarding "his conduct leading up to the alleged beating and arrest." Hughey contends he engaged in no conduct leading up to his beating and arrest other than knocking on the door of Denver Crumpton's home. Hughey has no memory of any other conduct. Again, because of his medical conditions, and the beating itself, Hughey has an imperfect memory of the events. Hughey simply remembers that he knocked on the door, Mason answered the door and began beating him.

Hughey also understands that he was instructed to "identify the circumstances prompting officers being called to the scene." Again here, Hughey regrettably has no knowledge of how, or why, other police officers were called to the scene. Hughey contends he did nothing wrong and broke no law. Until recently, Hughey believed that he had not been charged with any crime stemming from the incident. However, Hughey recently learned that he was indicted for the felony offense of burglary. Hughey denies engaging in any criminal conduct. However, even if Hughey had been burglarizing the home, rather than merely knocking on the door as he contends, this conduct would not have justified Mason's use of near-deadly force against Hughey.

While Hughey's memory of the events is sparse, it is sufficient to show that Mason is not qualifiedly immune. Hughey's factual allegations, taken as true, show that Mason beat Hughey mercilessly for no reason. Hughey alleges that Mason used extreme force on him by beating him, and that no force at all was necessary. Hughey was unarmed and non-threatening. Thus, any amount of force against Hughey was constitutionally excessive. Hughey alleges that the beating with fists employed by Mason was necessarily excessive under such circumstances. Hughey contends that an officer beating a citizen, merely because the citizen knocked on a door, is objectively unreasonable as a matter of law.

4

> Hughey need not have a perfect memory of this constitutional violation to state a claim for relief and show that Mason is not entitled to qualified immunity. The facts known, and alleged in this Reply, and substantiated by the medical records, are sufficient to overcome Mason's qualified immunity defense.

ROA. 127-129.

On August 7, 2018, the Magistrate Judge lifted the stay. ROA. 131. The next day, however, Defendant Mason filed another motion for judgment on the pleadings based on qualified immunity. ROA. 134-136.

Based on a second motion for qualified immunity, the Magistrate Judge, on August 13, 2018, again ordered the case stayed. ROA. 146.

District Judge Biggers deemed Plaintiff's reply adequate, and again denied Defendant's motion for judgment on the pleadings on September 17, 2018. ROA. 172-176; *Hughey v. Tippah Cnty., Mississippi,* No. 3:18-CV-00004-NBB-RP, 2018 WL 4471765 (N.D. Miss. Sept. 18, 2018). Judge Biggers was "cognizant of Hughey's failure to plead certain factual particulars," but held that Plaintiff would not be "penalized for failing to plead the factual particulars of the alleged actions when such facts are unknown to the plaintiff or are 'peculiarly within the knowledge of defendants.'" *Hughey,* 2018 WL 4471765 *2.

The Magistrate Judge lifted the second stay on September 19, 2018. ROA. 177. However, Defendant Mason filed yet another motion for a stay on October 9,

2018. ROA. 185-190. The Magistrate Judge denied this third request for a stay on November 20, 2018. ROA. 250 -253.

A month earlier, on October 16, 2018, the Magistrate Judge directed discovery to be completed by May 31, 2019. ROA. 226.

On January 7, 2019, Plaintiff gave notice to take the deposition of Defendant Mason and other witnesses. ROA. 279-290.

However, on January 29, 2019, the Magistrate Judge ordered the case stayed again, this time because the Magistrate Judge had been advised by counsel that criminal charges had been brought against Plaintiff Hughey. ROA. 297.

With this case having been stayed almost continuously for six (6) years (the first two stays due to claims for qualified immunity and the last four stays due to a pending state court action), on February 1, 2023, Plaintiff's counsel in the present civil action entered an appearance to defend Hughey in the state criminal case. ROA. 356-357.

After the state criminal case had been pending in state court for two (2) years and nine (9) months, on August 19, 2022, James Hughey unsuccessfully moved to lift the stay. ROA. 335-337.

On March 23, 2023, Plaintiff requested to substitute Karen Hughey as the Plaintiff, instead of James Hughey. Karen Hughey had been appointed conservator for James Hughey because of James Hughey's inability to manage his affairs. ROA.

459-461. The district court substituted Karen Hughey as Plaintiff on April 4, 2023. ROA. 465.

On August 14, 2023, this case was reassigned to District Judge Glen H. Davidson. ROA. 471. Judge Davidson entered an order on August 23, 2023, "administratively closing the case," because of the length of time the case had been stayed due to the pending criminal case. ROA. 472-473.

On September 29, 2023, Conservator Karen Hughey moved to reopen the case stating that the criminal case was now resolved. ROA. 474-483. James Hughey had entered an *Alford*[2] guilty plea to burglary. ROA. 474. The district court reopened the case on October 3, 2023. ROA. 484. The Magistrate Judge then allowed discovery through April 12, 2024. ROA. 487.

On October 11, 2023, Plaintiff moved to file a first amended complaint alleging that she had discovered errors in the original complaint through discovery in the state criminal case. ROA. 489-492. The proposed first amended complaint was attached as an Exhibit. ROA. 493-501.

On October 17, 2023, the Magistrate Judge permitted the filing of the first amended complaint. ROA. 503. The first amended complaint largely repeats the

---

[2] *North Carolina v. Alford*, 400 U.S. 25 (1970).

details alleged in the *Schultea* Reply. *See* First Amended Complaint, ¶¶ 7, 8, 9, 10, 11, 12, and 14. ROA. 507-509.

On July 2, 2024, District Judge Davidson, obviously disagreeing with the earlier opinion of District Judge Biggers, granted judgment on the pleadings based on qualified immunity. ROA. 589-597.

Despite Plaintiff's explanation in his reply of no memory of the events, District Judge Davidson dismissed the case because Plaintiff had failed to "plead any facts regarding his own conduct during the incident." ROA. 595. However, the dismissal did not address James Hughey's state law claims of assault against Defendant Mason, nor did it address the claims against Tippah County. ROA. 589-596.

With only the 42 U.S.C. § 1983 claim against Defendant Mason having been dismissed, the Magistrate Judge, on July 3, 2024, lifted the stay, finally allowing discovery. ROA. 598.

On July 16, 2024, James Hughey's conservator, Karen Hughey, moved to file a second amended complaint alleging details to the allegations. ROA. 600-618.

The proposed second amended complaint alleged that at the jail after the beating, Defendant Mason had initially denied that he had even been at the scene, but after further questioning, Defendant Mason had admitted that he had been at the

scene and then made the baseless claim that he hit James Hughey "only once." Proposed Second Amended Complaint, ¶16.  ROA. 604-618.

The proposed second amended complaint also alleged the reasons why James Hughey had entered the guilty plea explaining that because burglary under state law carries a minimum three (3) year prison sentence, and because James Hughey's health condition was so poor that any imprisonment would likely cause his death, James Hughey could not risk going to trial.

> Upon advice of his Conservator, James Hughey entered an *Alford* plea of guilty. Pursuant to a plea bargain agreement, James Hughey was given a suspended sentence with house arrest. James Hughey's mental state and inability to know where he was or what he was doing, posed possible defenses in his burglary case. James Hughey entered a guilty plea not because he was guilty, but because he could not risk even a slight chance of conviction. Putting James Hughey in jail in his condition would have likely resulted in his death.

Proposed Second Amended Complaint, ¶ 21.  ROA. 611.

On July 19, 2024, the Magistrate Judge entered an order setting deadlines giving the parties until December 31, 2024, to complete discovery.  ROA. 620.

On August 22, 2024, the Magistrate Judge denied the motion to file a second amended complaint because the scheduling order's time to allow amendments passed in 2018, and the Magistrate Judge held that the amendment was untimely. ROA. 681-685.  At that time, no depositions had yet been taken because of the multiple stays.  With a stay of discovery having finally been lifted, Plaintiff, on

9

August 27, 2024, renoticed various depositions, ROA. 686-691, and Defendants renoticed the deposition of Karen Hughey, ROA. 692-693.

On November 4, 2024, Plaintiff moved the court to revise its order dismissing the 42 U.S.C. § 1983 excessive force claim against Defendant Mason. ROA. 889-1100. The motion alleged that depositions had produced testimony that James Hughey was "doing nothing to warrant any use of force whatever at the time Mason took custody of him." ROA. 889. Thus, according to James Hughey, the factual basis for the order of dismissal no longer existed. Plaintiff attached the depositions of Defendant Mason and Karen Hughey to his motion. ROA. 892-1091.

During his deposition, Defendant Mason had testified that upon arrival at the Crumpton home, where his ex-wife, Amanda Mason, also resided, he saw James Hughey standing in a crouched position. ROA. 904. Mason testified he then jumped off the porch onto James Hughey to subdue Hughey. ROA. 907. Five (5) days later, on June 12, 2017, Defendant Mason typed a statement describing his actions. ROA. 909. The statement says that Hughey had taken an "aggressive posture." ROA. 910. Defendant Mason declined Plaintiff's counsel's request physically to demonstrate this "aggressive posture," claiming that he could not "mimic" James Hughey's position. ROA. 911-913. Defendant Mason testified he would have used the term, "aggressive posture," if James Hughey had either been moving forward or had been

10

yelling, although he did not state whether James Hughey was either yelling or moving forward.  ROA. 913.

At deposition, Defendant Mason denied he had ever hit James Hughey but admitted that he had written in his formal statement that he "fought Hughey."  ROA. 914-915.  Defendant Mason had no explanation as to how James Hughey was so severely injured that he suffered fractured ribs and a ruptured spleen.  ROA. 919-920.

Defendant Mason testified that James Hughey only needed to be detained, and did not need to be beaten up. ROA. 927. When he said that Hughey was "aggressive," Defendant Mason testified that he meant only that James Hughey was "not acting like a normal rational person." ROA. 929. Defendant Mason further testified that James Hughey was either "very drunk," or his sugar was "out of whack." ROA. 930.

Defendant Mason also testified that he had changed shirts at Amanda Mason's house because James Hughey's blood was on his shirt. ROA. 936.  James Hughey was bleeding from the back of his head. ROA. 936.

Defendant Mason testified that he had used steroids in the past, but does not recall whether or not he was on steroids at the time he detained James Hughey.  ROA. 971-973.

Karen Hughey testified that her brother, James Hughey, had been diagnosed with dementia, and sometimes "doesn't know who he is." ROA. 996. She described James Hughey as being "like a child." ROA. 996. James Hughey had major memory issues since at least 2013, and he remembered only "bits and pieces" of things. ROA. 1002-1004.

At deposition, Karen Hughey also described information given to her by Colleen Brown, Amanda Mason's sister. ROA. 1011-1012. Specifically, on the day James Hughey received his injuries, Colleen Brown told Karen Hughey to get to the hospital because Defendant Mason had beaten her brother James Hughey. ROA. 1012. Colleen Brown told Karen Hughey the source of her information was Colleen's sister, Amanda Mason, and Colleen's mother, Brenda Crofton, who had arrived at the Crofton-Mason home, and said that if she, Brenda Crofton, "hadn't stopped" Defendant Mason, he would have killed James Hughey. ROA. 1014-1015.

Karen Hughey testified James Hughey was transferred from the local Tippah County Hospital to "The Med," a hospital in Memphis, where James Hughey had asked her "why he got beat like that." ROA. 1028.

Karen Hughey also testified that Defendant Mason had come to the jail where James Hughey was before being taken to the hospital. She asked Defendant Mason, "Why did you beat him like that for?" Defendant Mason responded, "He shouldn't fuckin' break into somebody's house." ROA. 1029.

Karen Hughey described that immediately after the incident, Brenda Crofton, Amanda Mason's mother, and Colleen Brown, Amanda Mason's sister, had stated that Defendant Mason was probably "on one of his damn steroid-induced spells." ROA. 1072. Brenda and Colleen described Defendant Mason as a "monster." ROA. 1072. Subsequently, however, Colleen Brown had messaged Karen Hughey that "Amanda and them had done changed their story." ROA. 1074.

Karen Hughey testified that, following the injuries to her brother, she had received numerous text messages from other persons stating they had also been beaten by Defendant Mason. ROA. 1080. Karen Hughey testified that she herself had personal knowledge about Defendant Mason beating a sixteen (16) year old boy because she had taken the boy to the hospital after the beating. ROA. 1080-1081.

The district court denied the motion to revise because, "Plaintiff still offers the Court no information (beneficial to the Plaintiff ) about Hughey's conduct leading to and surrounding his arrest." ROA. 1127.

While the motion to revise was still pending, James Hughey died. ROA. 1158-1159. On March 6, 2025, Karen Hughey was substituted as the Plaintiff. ROA. 1183-1184.

On April 28, 2025, District Judge Davidson entered his Memorandum and Judgment, again refusing to revise his original opinion refusing to allow the second amended complaint, and finally dismissing claims. ROA. 1192-1200.

13

The district court also held the action is barred by *Heck v. Humphrey,* 512 U.S. 477 (1994), because James Hughey had been convicted of burglary. ROA. 1196-1199.  Additionally, the district court found the pleadings inadequate to state a claim against Tippah County, and also dismissed the state law assault claim against Defendant Mason since the federal claims had been dismissed.  ROA. 1201.

The Notice of Appeal was timely filed on April 29, 2025.  ROA. 1202-1204. The Amended Notice of Appeal was timely filed on May 5, 2025.  ROA. 1205-1207. Plaintiff hereby abandons any claim against Tippah County, Mississippi.  This appeal is limited to Plaintiff's claims against Defendant Mason in his individual capacity.

## STANDARD OF REVIEW

This Court reviews a district court's grant of judgment on the pleadings under Rule 12(c) *de novo.  See*, *Brittan Commc'ns Int'l Corp. v. Sw. Bell Tel. Co.,* 313 F.3d 899, 904 (5th Cir. 2002); *Hughes v. Tobacco Inst., Inc.,* 278 F.3d 417, 420 (5th Cir. 2001).  A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a motion to dismiss under Rule 12(b)(6).  *Johnson v. Johnson,* 385 F.3d 503, 529 (5th Cir. 2004) (citing *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.,* 313 F.3d 305, 313 n. 8 (5th Cir. 2002)).  "[T]he central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief."  *Hughes,* 278 F.3d at 420 (internal quotations omitted).  Although the appellate court must accept the factual allegations in the pleadings as true, a plaintiff

14

must plead "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007). "A claim is facially plausible if the pleaded factual content 'allows the court to draw the reasonable inference that [Defendants are] liable for the misconduct alleged.'" *Stratta v. Roe*, 961 F.3d 340, 349-50 (5th Cir. 2020).

## SUMMARY OF THE ARGUMENTS

None of the elements of the crime of burglary are elements of a claim for excessive force. Therefore, the district court erred in dismissing Plaintiff's excessive force claim.

District Judge Davidson should not have granted the motion for judgment on the pleadings by overruling District Judge Biggers' earlier correct finding that Plaintiff should not be penalized for failure to plead factual particulars of his alleged action, when such facts are unknown to Plaintiff, due to brain defects and are therefore, "peculiarly within the knowledge of the Defendants." Alternatively, there is no just reason to refuse to reconsider dismissal, when Plaintiff takes the individual Defendant's deposition and learns what the individual Defendant claims James Hughey was doing at the time he was nearly killed by Defendant.

15

## ARGUMENTS

### I. THE DISTRICT COURT ERRONEOUSLY DISMISSED PLAINTIFF'S 42 U.S.C. § 1983 CLAIM AS BARRED BY *HECK V. HUMPHREY*, 512 U.S. 477 (1994).

The district court held that Plaintiff's 42 U.S.C. § 1983 excessive force claim

is barred by *Heck v. Humphrey,* 512 U.S. 477 (1994). The district court wrote:

> The Court finds that imposing *Heck's* favorable termination rule in favor of the Defendants is appropriate here because Hughey was arrested, charged, and pled guilty based on the same underlying facts upon which the Plaintiff now bases her claims. In essence, the Plaintiff is asking the Court to find that Hughey was falsely arrested and prosecuted for burglary. Hughey, however, pled guilty to burglary; under *Heck*, therefore, the Plaintiff's pending constitutional claims cannot proceed.

ROA. 1196. *Hughey v. Tippah Cnty., Mississippi,* No. 3:18-CV-004-GHD-RP, 2025

WL 1230458 *3 (N.D. Miss. Apr. 28, 2025).

This was error.  In *Heck v. Humphrey*, a criminally convicted prisoner sued

for damages under 42 U.S.C. § 1983.  That inmate claimed that prosecutors and an

investigator had conducted "an unlawful, unreasonable, and arbitrary investigation,"

had "knowingly destroyed evidence," and had used "an illegal and unlawful voice

identification procedure."  *Heck*, 512 U.S. at 479.  They sought damages for

wrongful conviction.  *Heck* held:

> We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a

16

state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus . . . .

*Heck*, 512 U.S. at 486-487.

Here, however, Plaintiff's claim of the use of excessive force is unaffected by Plaintiff's conviction for burglary. The excessive force occurred after the alleged burglary had occurred. Furthermore, the elements of the two (2) causes were not the same.

The elements of burglary under Mississippi law are: "(1) the unlawful breaking and entering; and (2) the intent to commit some crime when entry is attained." *Terry v. State*, 126 So.3d 946, 949 (Miss. Ct. App. 2013) (quoting *Parker v. State*, 962 So.2d 25, 27 (Miss. 2007)).

The elements of a crime for excessive force under the Fourth Amendment are: "(1) an injury that (2) resulted directly and only from the use of force that was excessive to the need, and (3) the use of force that was objectively unreasonable." *Bush v. Strain*, 513 F.3d 492, 500-01 (5th Cir. 2008).

There is no element of the crime of burglary which is the same as any element of a Fourth Amendment excessive force claim. A burglary conviction does not decide whether excessive force has been used against the convicted criminal defendant.

17

As explained in *Sampy v. Rabb*, 144 F.4th 796, 799 (5th Cir. 2025):

> Under *Heck*, a plaintiff convicted of a crime cannot recover damages for an alleged violation of his constitutional rights if "judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." 512 U.S. at 487, 114 S. Ct. at 2372. *Heck* mandates the dismissal of Sampy's complaint if "success on the excessive force claim requires negation of an element of the criminal offense or proof of a fact that is inherently inconsistent with one underlying the criminal conviction." *Bush v. Strain*, 513 F.3d 492, 497 (5th Cir. 2008).

Since success on plaintiff's Fourth Amendment excessive force claim does not imply the invalidity of James Hughey's conviction or sentence for burglary, *Heck v. Humphrey* does not apply.

If Plaintiff were to succeed on the constitutional claim, it would not invalidate the conviction or its attendant sentence; *Heck* is no bar here. *Hicks v. LeBlanc*, 81 F.4th 497, 506-507 (5th Cir. 2023).

## II. THE DISTRICT COURT ERRED IN REFUSING TO REVISE ITS DISMISSAL WHEN PLAINTIFF PRODUCED FACTS FROM WHICH A REASONABLE JURY COULD INFER THAT JAMES HUGHEY HAD DONE NOTHING TO WARRANT DEFENDANT MASON BEATING HIM NEARLY TO DEATH.

Plaintiff's 42 U.S.C. § 1983 Fourth Amendment claim against Defendant Mason is that Defendant Mason used excessive force. A plaintiff asserting an excessive force claim under the Fourth Amendment must demonstrate:

> (1) an injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable.

18

. . .

> "[O]fficers engage in excessive force when they physically strike a suspect who is not resisting arrest."

*Santander v. Salazar*, 133 F.4th 471, 479-480 (5th Cir. 2025).

In evaluating the reasonableness of a police officer's conduct under the Fourth Amendment, there should be "a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Lytle v. Bexar Cnty., Tex.*, 560 F.3d 404, 411 (5th Cir. 2009) (citations and quotations omitted).

The circumstances to be considered include the "severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989).

The crime of burglary is severe. However, the crime was over by the time Defendant Mason arrived. James Hughey was in a confused state and posed no immediate threat to the safety of anyone. James Hughey was not actively resisting arrest. Despite all of this, he was beaten nearly to death. Thus, James Hughey's interest in being free from bodily harm outweighed any governmental interest in taking him into custody by beating him.

Neither the district court's original opinion granting the motion for judgment on the pleadings, 2024 WL 3280653, nor its opinion refusing to revise the earlier

19

opinion, 2025 WL 1230458, ever denies that a plausible Fourth Amendment violation had been pled.

Both Judge Davidson's granting the motion for judgment on the pleadings, and his subsequent refusal to revise his initial ruling, are based on qualified immunity since Plaintiff did not "plead any facts regarding his own conduct during the incident," as required by *Jackson v. City of Beaumont Police Dep't*, 958 F.2d 616, 621 (5th Cir. 1992). *Hughey*, 2024 WL 3280653 *4.

This holding was incorrect. Judge Biggers' earlier opinion correctly held that facts which are "peculiarly within the knowledge of defendants," are not required to be pled in order to escape qualified immunity. ROA. 175, quoting *Floyd v. City of Kenner, La.*, 351 F. App'x 890, 893 (5th Cir. 2009) (citing *Schultea v. Wood*, 47 F.3d 1427, 1432 (5th Cir. 1995)). Plaintiff's reply had alleged that James Hughey could not remember all of the details and that he had an imperfect memory of the events. ROA. 127-129. James Hughey's pre-existing memory issues and health problems are also pled in his First Amended Complaint. ROA. 504-512. These memory problems leave gaps in James Hughey's pleadings which could be filled only by facts peculiarly within Defendant Mason's knowledge. The district judge stretched qualified immunity too far when he declined to consider Defendant Mason's description of James Hughey's behavior, which Plaintiff brought to his attention as soon as possible after the taking of Defendant Mason's deposition.

20

Once Defendant Mason's deposition was taken, Plaintiff moved to amend the complaint, and moved the district court to revise its opinion, because the deposition of Defendant Mason had demonstrated that James Hughey had not done anything to warrant being beaten so severely.  ROA. 889-1091.

The only grounds given for refusing to revise the earlier opinion was District Judge Davidson's explanation that the newly-acquired deposition testimony was "too little, too late."  In fact, that testimony was neither too little, nor too late.  As to being "too little," Defendant Mason had admitted at deposition that there was no occasion for the use of force, because according to Defendant Mason, Hughey "just needed detained . . . he didn't need beat up or anything like that."  ROA. 927.  While Defendant Mason had said in a written statement that Hughey was "aggressive," Defendant Mason testified he only meant that Hughey was "not acting like a normal rational person," that he was either "very drunk," or his sugar was "out of whack."  ROA. 929-930.

Additionally, Defendant Mason's testimony was collaborated by Karen Hughey's deposition testimony, when Karen testified that the reason Defendant Mason gave for his actions was not to detain James Hughey but that, "he shouldn't fuckin' break into somebody's house."  ROA. 1029.

The district judge's rationale that Plaintiff's providing deposition testimony was "too late" is also wrong.  The case had been continuously stayed because of the

21

repeated filing of motions for qualified immunity by Defendant Mason, and by criminal proceedings having been brought against James Hughey. Accordingly, Plaintiff could not have submitted a version of events in more detail until Defendant Mason's deposition was taken. The depositions were the earliest time that Plaintiff could have provided the details which the district judge required.

By granting qualified immunity, the district court erroneously extended *Jackson v. City of Beaumont Police Dep't*, 958 F.2d 616, 621 (5th Cir. 1992), to a case where James Hughey could not remember the details and had to rely upon the Defendants to detail what James Hughey was doing at the time of the assault. On the other hand, when Karen Hughey, who had been substituted as the plaintiff, learned of the facts necessary to be pled, District Judge Davidson would not allow such amendment, based only on his comment that the request was "too little, too late."

Whether there was any need for force, and whether Defendant Mason's actions were reasonable, is a pure question of fact which should have been left to a jury. The court in *Lytle v. Bexar County, Tex.*, 560 F.3d 404, 411 (5th Cir. 2009), wrote:

> Moreover, the reasonableness of an officer's conduct under the Fourth Amendment is often a question that requires the input of a jury. This is not only because the jury must resolve disputed fact issues but also because the use of juries in such cases strengthens our understanding of Fourth Amendment reasonableness. As the Third Circuit stated in *Abraham v. Raso,* 183 F.3d 279, 290 (3d Cir.1999),

22

[R]easonableness under the Fourth Amendment should frequently remain a question for the jury. To put the matter more directly, since we lack a clearly defined rule for declaring when conduct is unreasonable in a specific context, we rely on the consensus required by a jury decision to help ensure that the ultimate legal judgment of "reasonableness" is itself reasonable and widely shared.

Quoting *Arnold v. Williams*, 979 F.3d 262, 267 (5th Cir. 2020), *Santander v. Salazar*, 133 F.4th 471, 478 (5th Cir. 2025), held:

However, "an assertion of qualified immunity . . . does not subject the complaint to a heightened pleading standard."

All that is necessary is to plead "facts which, if proved, would defeat [the] claim of immunity." *Guerra v. Castillo,* 82 F.4th 278, 285 (5th Cir. 2023). Plaintiff has met that standard and demonstrated facts which, if proved, indicate that Defendant Mason used an unreasonable amount of force upon James Hughey. Alternatively, when Defendant Mason admitted at deposition that there was no need for force, the district judge should have revised his earlier opinion and denied the motion for judgment on the pleadings.

## CONCLUSION

This Court should reverse the district court and remand the case for trial.

23

RESPECTFULLY SUBMITTED, this the 1st day of October, 2025.

> KAREN HUGHEY, EXECUTRIX OF THE
> ESTATE OF JAMES ALLEN HUGHEY,
>  Plaintiff-Appellant
>
> By: */s/ Jim Waide*
> JIM WAIDE, MS Bar No. 6857
> waide@waidelaw.com
> RACHEL PIERCE WAIDE, MS Bar No. 100420
> rpierce@waidelaw.com
> YANCE FALKNER, MS Bar No. 106107
> yfalkner@waidelaw.com
> WAIDE & ASSOCIATES, P.A.
> Tupelo, MS 38804-3955
> Post Office Box 1357
> Tupelo, MS 38802-1357
> (662) 842-7324 / Telephone
> (662) 842-8056 / Facsimile
>
> ATTORNEYS FOR PLAINTIFF-APPELLANT

## CERTIFICATE OF SERVICE

This will certify that undersigned counsel for Plaintiff-Appellant has this day filed the above and foregoing **Brief of Appellant** with the Clerk of the Court, utilizing this Court's electronic case data filing system (CM/ECF), which sent notification of such filing to the following:

**Daniel Griffith, Esq.**
**Arnold Luciano, Esq.**
**Jacks Griffith Luciano, P.A.**
**Post Office Box 1209**
**Cleveland, Mississippi 38732**
**dgriffith@jlpalaw.com**
**aluciano@jlpalaw.com**


**William Allen, Esq.**
**Katelyn Riley, Esq.**
**Butler Snow**
**1020 Highland Colony Parkway, Suite 1400**
**Ridgeland, Mississippi 39157**
**will.allen@butlersnow.com**
**katelyn.riley@butlersnow.com**


SO CERTIFIED, this the 1st day of October, 2025.

*/s/ Jim Waide*
JIM WAIDE
Attorney for Plaintiff-Appellant

25

## **CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS**

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 5421 words, excluding the parts exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally-spaced typeface using Corel WordPerfect Office X6, in 14-point Times New Roman font (except for footnotes, which are in 12-point Times New Roman font, as permitted by Fifth Circuit Rule 32.1).

3. The undersigned understands a material misrepresentation in completing this certificate or circumvention of the type-volume limits in Fed. R. App. P. 32(a)(7), the typeface requirements of Fed. R. App. P. 32(a)(5), or the type style requirements of Fed. R. App. P. 32(a)(6) may result in the Court's striking the brief and imposing sanctions against the person signing the brief.

SO CERTIFIED, this the 1st day of October, 2025.

*/s/ Jim Waide*
JIM WAIDE
Attorney for Plaintiff-Appellant

26